**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| GUOQING CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 25-2402-KHV |
| | ) | |
| DIANNE DURHAM | ) | |
| and AKINLOLU O. OJO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On August 19, 2025, Guoqing Chen, proceeding pro se, filed his Second Amended

Complaint And Request For Injunction (Doc. #8) against Dianne Durham, Senior Associate Dean

for Faculty Affairs and Development of the University of Kansas School of Medicine, in her

official and personal capacities, and Akinlolu O. Ojo, Executive Dean of the University of Kansas

School of Medicine, in his official capacity.  Plaintiff alleges that under 42 U.S.C. § 1983 and in

violation of the Fourteenth Amendment to the United States Constitution, defendants violated his

rights to (1) procedural due process, (2) equal protection and (3) substantive due process.[1]  See

---

[1]     Plaintiff's second amended complaint mentions substantive due process as a basis for federal jurisdiction, Second Amended Complaint (Doc. #8) at 3, and states that he "seeks judicial intervention to address the deprivation of his constitutional rights to procedural and substantive due process and equal protection."  Id. at 12.  In their motion to dismiss, defendants point out that the second amended complaint makes only those two passing references to "substantive due process" and argue that (1) these references are not enough to raise a substantive due process claim and (2) the allegations in the second amended complaint cannot be read to adequately plead such a claim, requiring dismissal pursuant to Rule 12(b)(6).

The Court notes that plaintiff's second amended complaint contains only two counts—violation of *procedural* due process and violation of equal protection.  See id.  Plaintiff does not respond to defendants' argument and to the extent he sought to bring a substantive due process claim, has abandoned it.  See C1.G ex rel. C.G. v. Siegfried, 38 F.4th 1270, 1282 (10th Cir. 2022)

(continued. . .)

Second Amended Complaint (Doc. #8) at 3.  This matter is before the Court on Defendants' Motion To Dismiss (Doc. #13) filed September 29, 2025.  For reasons explained below, the Court sustains defendants' motion.

## Legal Standards

The Court affords a pro se plaintiff some leniency and liberally construes his filings.  See James v. Wadas, 724 F.3d 1312, 1315 (10th Cir. 2013).  Although the Court holds a pro se litigant's filings to a less stringent standard than formal pleadings drafted by attorneys, a pro se party must follow the same rules of procedure as all other litigants.  See Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

Defendants seek to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    Rule 12(b)(1)—Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  Therefore, the law imposes a presumption against jurisdiction. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  The Court may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction, Scheideman v. Shawnee Cnty. Bd. Of Cnty. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).  Plaintiff bears the burden of showing that jurisdiction is proper, see Scheideman, 895 F. Supp. at 280, and must

---

[1] (. . .continued)
(court correctly dismissed plaintiff's facial challenge because he abandoned it by not addressing it in response to defendants' motion to dismiss).  The Court therefore dismisses with prejudice plaintiff's substantive due process claim.

demonstrate that the case should not be dismissed, see Jensen v. Johnson Cnty. Youth Baseball League, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993). Conclusory allegations of jurisdiction are not enough. United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Laufer v. Looper, 22 F.4th 871, 875 (10th Cir. 2022). A facial attack assumes that the allegations in the complaint are true and argues that they fail to establish jurisdiction. Baker v. USD 229 Blue Valley, 979 F.3d 866, 872 (10th Cir. 2020). A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. Id.

## II.    Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns" and "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). In all respects other than name, a suit against a government-entity employee in his or her official capacity is a suit against the government entity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment thus bars a request for money damages against the state and state officers in their official capacities. See Williams v. Utah Dep't of Corr., 928 F.3d 1209, 1212 (10th Cir. 2019) (Eleventh Amendment extends to arms of state and state officials sued for damages in official capacity). Likewise, the Eleventh

-3-

Amendment bars claims for injunctive and declaratory relief unless such claims seek "prospective" relief and the official has a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.  K.A. v. Barnes, 134 F.4th 1067, 1077 (10th Cir. 2025) (citing Ex parte Young, 209 U.S. 123 (1908)).

Federal courts cannot exercise either diversity or federal question jurisdiction over a state when Eleventh Amendment sovereign immunity is asserted.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  Arguments of sovereign immunity and subject matter jurisdiction are inextricably intertwined, and sovereign immunity is therefore a matter of subject matter jurisdiction.  Hartman v. Golden Eagle Casino, Inc., 243 F. Supp. 2d 1200, 1202 (D. Kan. 2003) (citing E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302 (10th Cir. 2001)).

### III.    Rule 12(b)(6)—Failure To State A Claim

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible— and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019).  Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content

from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

### Factual Background

Plaintiff's second amended complaint alleges as follows:

In 2013, Guoqing Chen began working at the University of Kansas Medical Center. Chen is a tenured professor at the KUMC School of Medicine.

The Medical Center Handbook for Faculty and the Kansas Board of Regents Policy Manual set procedures for Post-Tenue Review. "Post-Tenure Review" ("PTR") is a term of art in higher education. It refers to the periodic performance evaluation of faculty members after they have gained tenure. The Medical Center Handbook sets specific criteria for both Scheduled PTRs—which normally occur every seven years—and Triggered PTRs, which may only occur under limited conditions which include (1) "Three Unsatisfactory Annual Assessments within a 7-year time frame (these do not have to be consecutive);" (2) "By request of the faculty member;" or (3) "By request of the dean of the school." On October 18, 2022, plaintiff received notice that the

Dean's Office had set a Triggered PTR for 2023, which was one year earlier than his Scheduled PTR. Plaintiff had received a "needs improvement" rating, and his department chair[2] had requested the Triggered PTR.

Defendant Dianne Durham is the Senior Associate Dean for Faculty Affairs and Development at the School of Medicine. Durham is responsible for ensuring that the School of Medicine conducts PTRs in accordance with the Medical Center Handbook for Faculty and Board of Regents Policy Manual. Durham received, vetted and forwarded to Akinlolu O. Ojo, Executive Dean of the Medical School, the department chair's request for a Triggered PTR. Ojo then initiated a Triggered PTR pursuant to the Handbook's "by request of the dean of the school" provision. Plaintiff alleges that Durham and Ojo improperly initiated the Triggered PTR.

Since joining the School of Medicine in 2013, plaintiff had never received an "unsatisfactory" rating in any Annual Faculty Assessment. The Handbook does not list a "needs improvement" rating as a recognized basis for initiating a Triggered PTR—it lists "Three Unsatisfactory Annual Assessments within a 7-year time frame." By initiating and enforcing a Triggered PTR based on a "needs improvement" rating, Durham applied an unauthorized standard which lacked policy justification.

Plaintiff alleges that Durham and Ojo improperly channeled the Handbook's "by request of the dean of the school" condition by deliberately bypassing the Handbook's explicit criteria, thus depriving plaintiff of procedural safeguards inherent in his tenured position. As Executive Dean, Ojo served as the final decisionmaker for the approval and continuation of Triggered PTRs and the issuance of PTR outcomes within the School of Medicine. Plaintiff alleges that Ojo's

---

[2]   The parties refer to the department chair as "Dr. Salathe" but do not provide his first name.

approval of the request from Durham and the department chair did not constitute a genuine "request of the dean of the school." Plaintiff alleges that Ojo manipulated the Triggered PTR process by relying on the department chair's request and plaintiff's "needs improvement" rating rather than conducting an independent evaluation of plaintiff's documented performance. This delegation and rubber-stamping of an invalid initiation process deviated from the Handbook's framework for triggered PTRs, which contemplates objective bases such as "unsatisfactory" evaluations and genuine requests from a dean. As a result, the process was arbitrary, lacked the safeguards intended by the policy and deprived plaintiff of procedural due process protection for his tenured property interest.

The PTR in 2023 resulted in an assessment of "[u]nsatisfactory with the opportunity for remediation," a remediation plan and a scheduled follow-up PTR in 2025. Pursuant to the Medical Center Handbook, the PTR process mandates that the complete "confidential report" from the PTR Committee and "documentation recording the sense of the evaluation discussion shall be provided to the faculty Member" to facilitate a meaningful response and professional development. On July 26, 2023, plaintiff asked Durham for the full PTR Committee Report. On August 10, 2023, Durham responded with three bullet points outlining "areas for remediation," which she personally authored. She deliberately withheld the committee-authored confidential report and underlying discussion documentation. Her actions directly violated the Handbook's explicit reporting mandate and its mandate that "[t]he faculty member shall be given the opportunity to add comments to the documentation as part of the official record before it is considered at the next higher administrative level." Durham deprived plaintiff of adequate notice of alleged deficiencies, the opportunity to submit a meaningful rebuttal or remediation plan and procedural safeguards protecting his tenured property interest. Her conduct exposed plaintiff to unwarranted

stigmatization, remediation burdens and dismissal risks under color of state law.

On July 26, 2023, plaintiff informed Durham of his intent to have Professor Ronald Barrent, a senior tenured faculty member, accompany him to the remediation meeting as an academic adviser.  On August 2, 2023, Durham denied the request, falsely asserting that "our practice for any type of evaluation meeting does not include bringing an advisor."  Durham's statement directly contradicts Board of Regents PTR policy intent "to assist faculty members with identifying opportunities that will enable them to reach their full potential for contribution to the university."  On August 14, 2023, plaintiff repeated the request, noting the absence of any such prohibition in governing documents.  Without citing policy authority, Durham again refused.

For a third time, on August 15, 2023, the day of the meeting, Durham rejected plaintiff's request to have an academic advisor present.  She gave plaintiff a coercive ultimatum: attend the meeting alone or reschedule with a Human Resources representative present.  Plaintiff reasonably perceived the interjection of an HR representative—known for involvement in disciplinary and termination proceedings—as an intimidatory tactic designed to chill his procedural advocacy and due process rights under color of state law.  Plaintiff alleges that by compelling him to attend alone, under duress, Durham deprived him of the support and expertise of an academic adviser who could have assisted in meaningfully responding to the Committee's findings, challenging inaccuracies and collaboratively developing a fair and effective remediation plan.

On October 29, 2024, plaintiff received notification to submit materials for the 2025 PTR, which was a scheduled follow-up to the adverse 2023 PTR.  On or about December 18, 2024, plaintiff received his 2023-2024 Faculty Assessment covering the remediation period, which gave him "overall satisfactory" with "satisfactory" ratings in all categories.  Plaintiff's Division Director and Department Chair co-signed the assessment, which demonstrated that plaintiff had complied

with prior remediation expectations.  Despite this satisfactory assessment, on June 5, 2025, Durham informed plaintiff of the 2025 PTR outcome: "Unsatisfactory with the opportunity for remediation."  She attached a letter from Ojo requiring further remediation and scheduling another PTR in the spring of 2027, in apparent disregard of the department's interim evaluation.

As a result of the 2023 and 2025 PTR outcomes and the denial of mandated procedures, the School of Medicine placed plaintiff on remediation and repeat-review status.  Plaintiff alleges that this intentional bypass deprives him of procedural safeguards inherent in his tenured position and exposes him to unwarranted risks of remediation, stigmatization and potential dismissal.  Durham's actions, taken under color of state law, enabled and facilitated Ojo's subsequent approval of the Triggered PTR and violated plaintiff's right to procedural due process.

On June 6, 2025, plaintiff requested the full PTR Committee Report in writing.  On June 11, 2025, Durham replied that she would "prepare a report," implying that she would substitute of her own summary for the required committee document, as she did with the 2023 PTR.  On June 18, 2025, Durham provided a less-than-half-page summary which she authored— not the PTR Committee's report—deliberately omitting required committee-authored findings, decision rationale and recommendations which Board of Regents PTR policy mandates.  Plaintiff alleges that this intentional withholding deprived him of adequate notice of deficiencies, the opportunity to submit a meaningful rebuttal or appeal under Board of Regents due process provisions and procedural safeguards protecting his tenured property interest under the Fourteenth Amendment.  Plaintiff alleges that this exposed him to unwarranted stigmatization, extended remediation burdens and dismissal risks.

On June 20, 2025, plaintiff reiterated his request for the complete PTR Committee Report.  On June 24, 2025, Durham replied: "Our policy does not contemplate providing anything other

than a summary of the concerns and recommendations." On June 25, 2025, plaintiff quoted the Handbook's PTR Committee "Reporting Structure" requirement that "[a] confidential report will be submitted to the faculty member" and again requested the complete report. On July 2, 2025, Durham replied: "The policy you highlighted does not specify the format for reporting. We provide a summary to facilitate remediation plan development" and reattached her own summary. Durham's repeated and intentional refusal to provide the full PTR Committee Report obstructed plaintiff's ability to interpret the Committee's findings, prepare a rebuttal or engage in meaningful remediation.

On information and belief, a similarly situated tenured faculty member in the School of Medicine, subject to the same PTR policies during the relevant assessment period, received two "unsatisfactory" Annual Faculty Assessments. Under Section 5(3)(a)(ii) of the Medical Center Handbook for Faculty III: "When a tenured faculty member's annual assessment concludes for the second consecutive time that academic responsibilities have not been met (Unsatisfactory Overall Assessment), . . . The faculty member or the dean . . . may request a triggered post-tenure review." Despite this policy authorizing a dean-requested Triggered PTR, Durham has not enforced such a process on that tenured faculty member. In contrast, Durham singled out plaintiff—who had no "unsatisfactory" Annual Faculty Assessments and only a "needs improvement"—for a Triggered PTR. In doing so, she intentionally bypassed established criteria. On information and belief, plaintiff is the only tenured faculty member in the School of Medicine who has been subjected to a Triggered PTR under these circumstances. Plaintiff alleges that Durham's selective and inconsistent enforcement of policy constitutes disparate treatment of similarly situated faculty without a rational basis, in violation of plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff pursued internal remedies in good faith.  On July 11 and 18, 2025, plaintiff emailed Dr. Robert Klein, Vice Chancellor for Academic and Student Affairs at the Medical Center, requesting the complete PTR Committee Reports and an extension of the grievance deadline under the Medical Center Faculty Handbook.  As of July 23, 2025, when plaintiff filed the original complaint, Klein had not responded.  The next day, after more than ten days, Klein responded that beyond Durham's summary, "no other materials" existed.  He directed plaintiff to "meet with Dr. Durham to establish a remediation plan for this academic year," but was silent on plaintiff's request for a grievance deadline extension, demonstrating the inadequacy of internal remedies.

On July 24, 2025, plaintiff again requested that Klein approve a grievance deadline extension, asking for a response by July 28, 2025, to preserve his right to file a timely internal grievance.  On July 30, 2025, having received no further response, plaintiff submitted a formal grievance to Klein under Faculty Handbook procedures.  On July 31, 2025, plaintiff emailed Dr. Jo Wick, Chair of the Appointment, Promotion and Tenure Committee at the School of Medicine inquiring about the PTR Committee composition, selection and reports.  As of August 14, 2025, Wick had not responded.

On August 4, 2025, Klein confirmed receipt of the grievance and suggested an informal resolution, but his delayed response did not resolve the underlying violations and demonstrated the inadequacy of internal remedies.  Due to defendants' multiple violations and the inadequacy of internal remedies, plaintiff seeks judicial intervention to address the deprivation of his constitutional rights to procedural and substantive due process and equal protection.

Count 1 alleges that in violation of 42 U.S.C. § 1983, defendants violated plaintiff's rights to procedural due process by (1) withholding the full PTR Committee Reports despite multiple written requests; (2) substituting self-authored summaries for committee-authored evaluations;

-11-

(3) denying plaintiff the company of an academic adviser at remediation meetings; (4) relying on fabricated policy interpretations to justify procedural denials; (5) employing a coercive tactic; (6) invoking the "request by dean" condition without independent factual basis and approving a Triggered PTR initiated through a non-policy trigger; and (7) failing to verify that the required policy criteria were met before approving the Triggered PTR.  Plaintiff alleges that as a result of these deprivations, he has suffered emotional distress, reputational stigma, reduced professional capacity and increased risk of termination.

Count 2 alleges that in violation of 42 U.S.C. § 1983, defendants violated plaintiff's rights to equal protection by selectively enforcing a non-policy "needs improvement" standard against plaintiff while not applying the same standard to similarly-situated tenured faculty members with equal or worse Annual Faculty Assessment ratings.  Plaintiff alleges that as a result, he suffered stigma, reputational harm and increased vulnerability to dismissal.

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages and attorney fees.

### Analysis

Defendants argue that the Court should dismiss plaintiff's complaint in its entirety because (1) Eleventh Amendment immunity bars plaintiff's official capacity claims against Durham and Ojo, (2) plaintiff fails to state a procedural due process claim on which relief can be granted, (3) plaintiff fails to state an equal protection claim on which relief can be granted and (4) Durham is entitled to qualified immunity on the personal capacity claims against her.

I.      **Whether Eleventh Amendment Immunity Bars Plaintiff's Official Capacity Claims**

The Eleventh Amendment applies "regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."  Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1252

(10th Cir. 2007). In Ex parte Young, the Supreme Court recognized a narrow exception to Eleventh Amendment immunity and held that the Eleventh Amendment does not bar suits that (1) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law and (2) are aimed against state officers acting in their official capacities. See Hill v. Kemp, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (citing Ex parte Young, 209 U.S. at 128). To determine whether Ex parte Young applies, the Court conducts a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 636 (2002) (internal quotation marks omitted).

Defendants argue that the Eleventh Amendment bars plaintiff's claims against them in their official capacities as State officials, and that the Ex parte Young exception does not apply because plaintiff is seeking retrospective damages for past harms rather than prospective relief. Plaintiff does not dispute that the Eleventh Amendment generally bars his claims against defendants in their official capacities but argues that he is seeking prospective relief, so his claims fall under the Ex parte Young exception.

As mentioned above, to fall under the Ex parte Young exception, plaintiff's complaint must (1) allege an ongoing violation of federal law and (2) seek relief properly characterized as prospective. Verizon Maryland, Inc., 535 U.S. at 636. Plaintiff argues that his second amended complaint alleges ongoing due process violations because defendants (1) are currently and continuously withholding the mandatory 2023 and 2025 PTR Committee reports and (2) are currently maintaining procedurally tainted and arbitrary "Unsatisfactory" outcomes in plaintiff's file. Plaintiff argues that the violation recurs every day that defendants withhold the reports and actively rely on the flawed record to govern plaintiff's future employment status. Plaintiff argues

that his complaint seeks prospective relief because he seeks injunctions to (1) compel the disclosure of the reports, (2) nullify the tainted 2023 and 2025 outcomes and (3) enjoin defendants from relying on those outcomes in the future.

Plaintiff's requests that the Court nullify the tainted 2023 and 2025 outcomes and enjoin defendants from relying on the outcomes in the future allege ongoing violations and seek prospective relief. See Odhuno v. Reed's Cove Health & Rehab., LLC, 355 F. Supp. 3d 1026, 1050 (D. Kan. 2018) (injunctive relief in form of court order to expunge or remove files or false information falls within scope of Ex parte Young). The proposed injunctive relief would prevent future harm to plaintiff and is not limited to past violations. Thus, the Eleventh Amendment does not bar these claims, which plaintiff brings against both defendants.

Plaintiff's request that the Court compel the disclosure of the reports, on the other hand, seeks to redress past harm rather than prevent prospective violations of federal law. See Buchheit v. Green, 705 F.3d 1157, 1159 (10th Cir. 2012) (request that state appellate court grant plaintiff's request to proceed in forma pauperis and docket appeals "merely seeking to address alleged past harms rather than prevent prospective violations of federal law"). Even if defendants' failure to disclose the reports has continuing effects, "a continuing effect of a past violation is not sufficient to warrant prospective injunctive relief." Sanders ex rel. Rayl v. Kansas Dep't of Soc. & Rehab. Servs., 317 F. Supp. 2d 1233, 1244 (D. Kan. 2004). Plaintiff has not alleged that compelling the disclosure of the reports will prevent future harm. Thus, this claim falls outside of the Ex parte Young exception, and the Eleventh Amendment bars it.

Accordingly, the Court dismisses for lack of subject matter jurisdiction plaintiff's official capacity claim to compel Durham and Ojo to disclose the reports.

## II.    Whether Plaintiff States A Procedural Due Process Claim

Plaintiff alleges that as a tenured professor, he has a property interest in continued employment and in certain procedures related to his tenured status.  Defendants argue that plaintiff has failed to state a procedural due process claim because he has not alleged the deprivation of a protected interest.  Specifically, defendants argue that plaintiff (1) remains a tenured professor, (2) does not have a property interest in review procedures such as receiving a complete committee report or having an academic advisor present in the meetings, (3) does not have a property interest in having his personnel file free of negative reports where the reports have not caused a loss of stature or pay and (4) has not stated a property interest in his professional reputation.

Plaintiff responds that his second amended complaint alleges a deprivation of material terms and conditions of his employment because his change in status from a tenured professor who had no "unsatisfactory" Annual Faculty Assessments to one who is formally designated as "unsatisfactory" and placed on a probationary period (1) formally imposed remediation, (2) triggered an accelerated, punitive review cycle and (3) is the mandatory predicate for dismissal.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the . . . Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  To determine whether an individual has been deprived of his right to procedural due process, the Court must "engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, (2) was the individual afforded an appropriate level of process."  Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994).

Here, plaintiff has failed to satisfy the first prong.  Plaintiff claims that defendants deprived him of his property interest in his position as tenured professor, but he remains a tenured professor

and has not alleged that defendants have taken any steps to terminate his employment.  See Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007) (plaintiffs' property interest in continued employment could not form basis of due process claim where plaintiffs remained employed at same rank and compensation); Heublein v. Wefald, 784 F. Supp. 2d 1186, 1194 (D. Kan. 2011) (plaintiff's interest in continued employment as tenured professor not at issue because plaintiff remained tenured professor).

Plaintiff also claims that defendants deprived him of property interests by depriving him of the Committee Report and an advisor's presence in the meeting.  The Tenth Circuit has established, however, that "an entitlement to nothing but procedure cannot be the basis for a property interest;" "process is not an end in itself, but instead serves only to protect a substantive interest to which the individual has a legitimate claim of entitlement."  Teigen, 511 F.3d at 1081 (internal quotation marks omitted).  Here, access to the Committee Report and an advisor are procedures which protect plaintiff's property interested in continued tenured employment, not independent property interests.  Likewise, plaintiff does not have a property interest in having his personnel file free of negative reports.  See Heublein, 784 F. Supp. 2d at 1194 (collecting cases which hold that interest in having personnel file free of negative reports does not give right to due process unless reports caused loss of stature or pay).

Plaintiff has also failed to allege harm to his professional reputation because the Medical Center has not terminated his employment, and he has not alleged the foreclosure of any other employment opportunities.  See id. (for harm to professional reputation to serve as basis of procedural due process claim, plaintiff must demonstrate (1) statements that impugn good name, reputation, honor or integrity of the employee; (2) falsity of the statements; (3) statements occurred in course of terminating employee or foreclose other employment opportunities; and (4) statements

were published).

Plaintiff has failed to state a procedural due process claim upon which relief can be granted. Accordingly, the Court dismisses his procedural due process claims.[3]

### III.   Whether Plaintiff States An Equal Protection Claim

Plaintiff claims that defendants irrationally inverted objective policy by punishing him, who met none of the Handbook's criteria for a Triggered PTR, while sparing a comparator who met the Handbook criteria.

Defendants argue that plaintiff fails to state an equal protection claim because in Engquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008), the Supreme Court held that the class-of-one equal protection theory does not apply in the public employee context, i.e. when the government acts as an employer as opposed to a sovereign.  Plaintiff responds that Engquist does not bar his claim because (1) his claim challenges objective rules, not subjective discretion, (2) defendants engaged in policy fabrication, not legitimate discretion, (3) plaintiff pleads a plausible policy inversion and (4) plaintiff pleads a direct factual contradiction demonstrating irrationality.

"Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens certain classes of citizens." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215–16 (10th Cir. 2011).  Nevertheless, a plaintiff who does not allege membership in a protected class can bring a "class of one" claim by alleging that (1) he has been intentionally treated differently from others similarly situated and (2) no rational basis explains the difference in treatment.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Supreme Court, however, has "unequivocally" held that the class-of-one equal protection theory does not

---

[3]   Because the Court finds that plaintiff fails to state a procedural due process claim, it need not address defendants' argument that the Medical Center provides extensive and constitutionally adequate processes for PTR.

apply in the public employment context, and that a "public employee-turned-plaintiff must be a member of an identifiable class to bring an equal protection claim." Pignanelli v. Pueblo Sch. Dist. No. 60, 540 F.3d 1213, 1220 (10th Cir. 2008) (citing Engquist, 553 U.S. at 598). Plaintiff does not dispute that he is a public employee, and he has not alleged that defendants treated him unfairly based on protected status.

Plaintiff centers his equal protection claim on the fact that a comparator who received two "unsatisfactory" Annual Faculty Assessments did not receive a Triggered PTR. Plaintiff argues that this implicates "objective rules, not subjective discretion," "policy fabrication" and "direct factual contradiction demonstrating irrationality." Plaintiff relies on Section 5(3)(a)(ii) of the Medical Center Handbook for Faculty III, which states: "When a tenured faculty member's annual assessment concludes for the second consecutive time that academic responsibilities have not been met (Unsatisfactory Overall Assessment), . . . The faculty member or the dean . . . *may* request a triggered post-tenure review." The Handbook does not mandate a Triggered PTR if a tenured faculty member receives two unsatisfactory assessments—it places *subjective discretion* on the dean. This aligns with the Supreme Court's logic that class-of-one equal protection theory does not apply in the public employee context because the decisions are often "subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." Enquist, 553 U.S. at 591.

For these reasons, plaintiff has failed to state a class-of-one equal protection claim on which relief can be granted. Accordingly, the Court dismisses plaintiff's class-of-one equal protection claim.

## IV.    Whether Defendants Are Entitled To Qualified Immunity

Durham argues that to the extent plaintiff asserts claims against her in her individual

-19-

capacity, she is entitled to qualified immunity because (1) plaintiff failed to state a claim for a procedural due process or equal protection violation and (2) no clearly established law holds that her alleged actions were unconstitutional.  Plaintiff responds that (1) he has plausibly alleged violations of his Fourteenth Amendment rights and (2) Durham's due process and equal protection violations were clearly established.

When defendant raises a qualified immunity defense, the Court "must decide (1) whether the plaintiff plausibly alleged a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the alleged violation." Frey v. Town of Jackson, Wyo., 41 F.4th 1223, 1232 (10th Cir. 2022).  Plaintiff bears the burden to show the law was clearly established." Id. at 1235.

As established above, plaintiff has failed to plausibly allege a violation of a constitutional right.  Durham is therefore entitled to qualified immunity.

Accordingly, the Court dismisses plaintiff's claims against Durham in her individual capacity.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss (Doc. #13) filed September 29, 2025 is **SUSTAINED**.

Dated this 6th day of March, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
